B. Newal Squyres, ISB No. 1621
Robert A. Faucher, ISB No. 4745
HOLLAND & HART LLP
Suite 1400, U.S. Bank Plaza
101 South Capitol Boulevard
P.O. Box 2527
Boise, ID  83701-2527
Telephone:  (208) 342-5000
Facsimile:  (208) 343-8869
E-mail:  nsquyres@hollandhart.com
          rfaucher@hollandhart.com
Attorneys for Defendant Aspen Realty, Inc.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ST. PAUL FIRE & MARINE INSURANCE COMPANY,<br><br>                    Plaintiff,<br><br>v.<br><br>ASPEN REALTY, INC. d/b/a COLDWELL BANKER ASPEN REALTY,<br><br>                    Defendant. | Case No. CIV 05-00355-MHW<br><br>**DEFENDANT'S RESPONSE TO PLAINTIFF'S SUMMARY JUDGMENT MOTION OF AUGUST 28, 2006** |

ASPEN REALTY, INC., by and through its attorneys Holland & Hart LLP, hereby

responds to the summary judgment motion of plaintiff St. Paul Fire & Marine Insurance

Company ("Insurer").

## I.  INTRODUCTION

This is an insurance coverage lawsuit between an insurance company and Aspen

Realty, which is a Boise-based residential real estate brokerage company.

DEFENDANT'S RESPONSE TO PLAINTIFF'S SUMMARY JUDGMENT MOTION-1

A couple named Bafus filed a class action complaint in this Court against Aspen Realty (the "Bafus Litigation").[1]  The complaint, alleging various claims, was served upon Aspen Realty during the relevant policy period.[2]  The complaint is utterly without merit, and Aspen Realty is defending it vigorously.

Insurer brought this lawsuit seeking a declaratory judgment that it has no duty to defend or indemnify Aspen Realty in the Bafus Litigation.  In its Motion and accompanying memorandum of law ("Insurer's Brief"), Insurer argues that it has no duty to defend or indemnify for four different reasons:

- it contends that the policy excludes claims resulting from Aspen Realty's commissions and the Bafuses' claims result from Aspen Realty's commissions;
- it contends that the policy excludes coverage for known wrongful acts, and Aspen Realty should have known that its acts towards the Bafuses were wrongful;
- it contends that the Bafuses' claim against Aspen Realty was first made in 2000, prior to the coverage period; and
- it contends that the policy excludes coverage for antitrust claims and the Bafuses are only prosecuting antitrust claims.

As is set forth below, Insurer's arguments are without merit.

## II.  SUMMARY OF THE FACTS

Aspen Realty admits that the facts set forth in Insurer's Statement of Facts ("Insurer's SOF," docket no. 15, attachment no. 1) are true with the exception of paragraphs 19-21.  To keep the record as simple as possible, Aspen Realty accordingly makes reference throughout this reply to Insurer's SOF.[3]  To the extent that Aspen

---

[1] *Robert and Renae Bafus v. Aspen Realty, Inc.*, Case No. 04-121-C-BLW, United States District Court, District of Idaho.

[2] *Insurer's Statement of Facts* (docket no. 15, attachment 1), ¶ 4; *Aspen's Statement of Facts*, ¶ 2.

[3] Aspen Realty found Insurer's Statement of Facts and the accompanying affidavit difficult to work with, given the number of exhibits, the number of exhibits to the exhibits, and the many multiple conflicting docket entry notations at the top of the

Realty relies on facts other than those set forth in Insurer's SOF, it cites to its own Statement of Facts ("Aspen's SOF") filed herewith.

In 2000, the Bafuses and a builder signed a contract under which the builder agreed to build a new house for the Bafuses in Eagle. The builder retained Aspen Realty to represent him as the seller in the transaction.[4] The Bafuses retained Aspen Realty to represent them as the buyers in the transaction.[5] Aspen's dual role is permitted under Idaho statute,[6] and the Bafuses consented, in writing, to Aspen Realty's dual role.[7] When the transaction closed and the Bafuses bought their house, Aspen Realty collected a commission, which was paid by the builder.[8] Almost invariably, when a real estate agent is involved in the sale of a house in the Boise metropolitan area, the seller pays the commission.[9]

The Bafuses sued Aspen Realty in 2004, alleging that they had somehow been damaged by Aspen Realty's conduct even though the Bafuses had not even paid the commission. The Bafuses' complaint contained claims under the Idaho Consumer Protection Act; the federal Real Estate and Settlement Procedures Act; the federal Sherman Act; and the Idaho Competition Act.[10]

---

pages. Nonetheless, given that Aspen Realty does not dispute any of the facts or documents advanced by Insurer with the exception of those few identified above, it makes no sense for Aspen Realty to file new copies of all of the same materials.
[4] *Aspen's SOF*, ¶ 3.
[5] *Aspen's SOF*, ¶¶ 4, 5.
[6] I.C. § 54-2088.
[7] *Aspen's SOF*, ¶¶ 4, 5, 6.
[8] *Aspen's SOF*, ¶ 7.
[9] *Aspen's SOF*, ¶ 8.
[10] *Aspen's SOF*, ¶ 10.

DEFENDANT'S RESPONSE TO PLAINTIFF'S SUMMARY JUDGMENT MOTION-3

Aspen Realty was served with the lawsuit in 2005, while Aspen Realty was covered by Insurer's policy number GL006319156 (the "Policy").[11]  Aspen Realty promptly gave notice of the lawsuit to Insurer.[12]

The Court dismissed the Bafuses' Consumer Protection Act and Real Estate Settlement Procedures Act claims on February 8, 2006.[13]  The Bafuses subsequently filed an amended complaint on February 28, 2006, in which they asserted only the Sherman Act and Idaho Competition Act claims.[14]  The Bafuses' lawsuit remains pending before the Court.

### III.  ARGUMENT

Summary judgment can be granted only when the moving party has demonstrated the absence of any genuine issue of material fact, and that it is entitled to judgment as a matter of law.  The evidence must be viewed in the light most favorable to the non-moving party, here Aspen Realty.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 255-56 (1986).  Insurer has not met its burden here and summary judgment should be denied.

A.    Insurance Policies are Interpreted in the Favor of the Insured.

An insurance policy is a contract and the parties' rights and remedies are primarily established within the four corners of the policy.  *Featherston v. Allstate Ins. Co.*, 125 Idaho 840, 843, 875 P.2d 937, 940 (1994).  Where the policy language is clear and unambiguous, coverage must be determined as a matter of law according to the plain meaning of the words used.  *Mutual of Enumclaw Ins. Co. v. Roberts*, 128 Idaho 232, 235, 912 P.2d 119, 122 (1996).

---

[11] *Aspen's SOF*, ¶ 2; *Insurer's SOF*, ¶ 4.
[12] *Aspen's SOF*, ¶ 2.
[13] *Insurer's SOF*, ¶ 17; *Bannon Aff.*, Ex. 5.
[14] *Insurer's SOF, ¶* 18; *Bannon Aff.*, Ex. 1-C; Bafus Litigation Docket no. 83.

DEFENDANT'S RESPONSE TO PLAINTIFF'S SUMMARY JUDGMENT MOTION-4

However, where the policy is reasonably subject to differing interpretations, the language is ambiguous and its meaning is a question of fact which must be resolved by the trier of fact. *Moss v. Mid-America Fire and Marine Ins. Co.*, 103 Idaho 298, 300, 647 P.2d 754, 756 (1982). To determine the meaning of an ambiguous policy, the trier of fact must determine what a reasonable person would have understood the language to mean and the words used must be construed given their ordinary meaning. *Clark v. Prudential Prop. and Cas. Ins. Co.*, 138 Idaho 538, 541, 66 P.3d 242, 245 (2003).

Because insurance policies are contracts of adhesion, not typically subject to negotiation between the parties, ambiguities must be construed most strongly against the insurer and in favor of the insured. *Id.* Where language may be given two meanings, one of which permits recovery by the policyholder and the other does not, the language is to be given the construction most favorable to the insured. *Erikson v. Nationwide Mut. Ins.*, 97 Idaho 288, 292, 543 P.2d 845 (1975). Where there is ambiguity in interpreting insurance exclusions, any doubt must be resolved against the insurer. *Bonner County v. Panhandle Rodeo Ass'n, Inc.*, 101 Idaho 772, 776, 620 P.2d 1102, 1106 (1980).

"An insurer seeking to establish that it has no duty to defend" – as Insurer seeks to do here – "confronts a difficult burden since, at this stage, any doubts as to coverage must be resolved in favor of the insured." *Constr. Mgmt. Sys., Inc. v. Assurance Co. of America*, 135 Idaho 680, 682, 23 P.3d 142, 144 (2001). An insurer's duty to defend arises upon the filing of a complaint whose allegations, in whole or in part, read broadly, reveal a *potential* for liability that would be covered by the insured's policy. *Kootenai County v. West. Cas. & Sur.*, 113 Idaho 908, 910, 750 P.2d 87, 89

DEFENDANT'S RESPONSE TO PLAINTIFF'S SUMMARY JUDGMENT MOTION-5

(1988)(*citing State of Idaho v. Bunker Hill Co.*, 647 F. Supp. 1064, 1068 (D. Idaho

1986)(emphasis in original).

B.      Insurer's "Commission" Summary Judgment Argument Must Be Rejected.

The Policy states that Insurer "won't cover loss that results from fees, deposits,

commissions or other charges for [insured's] real estate professional services."  Insurer

contends that it has no duty to defend or indemnify because the Bafuses' claim is

subject to this exclusion.  *Insurer's Brief*, pp. 12-14.

Insurer is wrong.  The Bafuses' claim against Aspen Realty does not "result"

from "commissions."  Or, at the least, there is a factual question regarding whether the

Bafuses' claim results from commissions.

Aspen Realty contends that the Bafuses' claim does not "result" from

commissions because the Bafuses did not pay Aspen Realty any commissions.  The

Bafuses bought a house.  The seller of the house was the builder, Walker Building.

Commissions on residential real property sales in the Boise geographical area are

almost always paid for by the seller.[15]  That was true in this instance.  Walker Building,

the seller, paid the commission to Aspen Realty.  Attached to the Laraway Affidavit as

Exhibit D is the settlement statement from the closing of the purchase and sale

transaction.  The settlement statement unambiguously shows that the seller paid the

commission.[16]

Since the Bafuses did not pay the commission, it cannot be – as Insurer would

contend – that the Bafuses are in actuality seeking a return of their commission.  "The

duty to defend exists so long as there is a genuine dispute over facts bearing on

[15] *Aspen's SOF*, ¶ 8.
[16] *Aspen's SOF*, ¶ 7.

DEFENDANT'S RESPONSE TO PLAINTIFF'S SUMMARY JUDGMENT MOTION-6

coverage or over the application of the policy's language to the facts." *Constr. Mgmt. Sys., Inc., supra,* 135 Idaho at 682-83, 23 P.3d at 144-45. Aspen Realty genuinely disputes that the Bafuses are in a position to seek the "return" of commissions they did not pay in the first instance. Instead of financing Aspen Realty's strong defenses, Insurer is accepting Bafuses' senseless allegations as true. This is the epitome of what a liability insurer is not supposed to do.

At the least, the commission exclusion is ambiguous. What does it mean that the loss "results" from commissions? Insurer seems to be arguing that if the loss has anything to do with commissions, then the loss is not insured. *Insurer's Brief,* pp. 13-14. This overly broad reading must be rejected.

The Bafuses' claim did not "result from" commissions. Even the Bafuses, in their complaints, acknowledge that Aspen Realty was entitled to a commission.[17] The contention the Bafuses raised was that Aspen Realty violated the law by compelling the Bafuses to purchase real estate brokerage services with respect to a house when the Bafuses contend they only wanted to purchase real estate services with respect to a bare lot.[18] The Bafuses are not suing on a contract claim to recover some of the commissions they supposedly paid. Instead, they are seeking a full range of remedies under the antitrust laws, including injunctive relief and treble damages.[19]

The opinions to which Insurer cites, *Insurer's Brief*, pp. 13-14, are not on point. Those opinions concern different policy language than that at issue here. Specifically, the policy language in those opinions does not include the verb "results." So far as

---

[17] *Bannon Aff.*, Ex. 1-B, ¶ 20, Ex. 1-C, ¶ 14.
[18] *Bannon Aff.*, Ex. 1-B, ¶¶ 18-23, Ex. 1-C, ¶¶ 11-17.
[19] *Bannon Aff.*, Exs. 1-B, 1-C.

DEFENDANT'S RESPONSE TO PLAINTIFF'S SUMMARY JUDGMENT MOTION-7

Aspen Realty has been able to determine, there is no reported case law analyzing this exact policy language.

For the above reasons, Insurer is not entitled to summary judgment in respect of the "commission" exclusion.

C.    <u>If this Court Were to Apply the "Commission" Exclusion, then the Policy is Illusory and Aspen Realty is Entitled to Coverage as a Matter of Law</u>.

If this Court were to determine that the commission exclusion excludes the Bafus Litigation from being a covered claim, then Aspen Realty would submit that the Policy coverage is illusory because few, if any, claims against real estate agents would be covered.  This would result in the Policy being void on the grounds of public policy.

The so-called "illusory policy" is subject of special antipathy in the Idaho case law.  The leading case is *Martinez v. Idaho Counties Reciprocal Mgmt. Program*, 134 Idaho 247, 999 P.2d 902 (2000).  An illusory policy is a policy in which, as a practical matter, the limitations and exclusions swallow all, or nearly all, of the coverage the policy supposedly provides.  As stated by the *Martinez* court regarding the policy at issue there, "it appears that if any actual coverage does exist it is extremely minimal and affords no realistic protection to any group or class of injured persons."  134 Idaho at 252, 999 P.2d at 907.  "This Court will not allow policy limitations and exclusions to defeat the precise purpose for which the insurance is purchased."  *Id*.  "When a policy only provides an illusion of coverage for its premiums the policy will be considered void for violating public policy."  *Nat'l Union Fire Ins. Co. v. Dixon*, 141 Idaho 537, 541, 112 P.3d 825, 829 (2005).

DEFENDANT'S RESPONSE TO PLAINTIFF'S SUMMARY JUDGMENT MOTION-8

The Policy is described by Insurer as a "Real Estate Professionals Service Liability" policy.[20]  Purportedly, then, the policy provides coverage to real estate professionals and the companies for which they work.  But if the Court were to adopt Insurer's reading of the commissions exclusion, then the exclusion would probably apply to every claim against every real estate broker.

Real estate salespersons invariably earn all or nearly all of their income from commissions or fees paid at lot and house closings.  Aspen Realty earns all or nearly all of its revenue from commissions or fees paid at lot and house closings.[21]

It seems self-evident that claims made against Aspen Realty will almost invariably arise from transactions that close – generating a commission – since no money changes hands in deals that do not close, and the parties' positions are not altered.[22]  Accordingly, then, claims against real estate agents will invariably arise from deals in which the real estate agent earns a commission.  On the basis of the example before this Court, the Court would be justified in assuming that Insurer in every instance would therefore contend that the damages claim "results" from a commission, since (i) the remunerative relationship between agent and seller (or buyer) would be the central fact of the case, and (ii) any claim for damages would involve repayment of the commission.

This suspicion is borne out by Insurer's reliance on *Continental Cas. Co. v. Brady*.[23]  In that opinion, a negligence claim by a client against an attorney was excluded from coverage by the attorney's liability policy because the claim was found

---

[20] *Bannon Aff.*, Ex. 1-A, p. 39 of 60.
[21] *Aspen's SOF*, ¶ 9.
[22] *Aspen's SOF*, ¶ 11.
[23] 127 Idaho at 830, 907 P.2d 807 (1995).

DEFENDANT'S RESPONSE TO PLAINTIFF'S SUMMARY JUDGMENT MOTION-9

to be a claim for "return of fees" in light of the fact that the fees paid allegedly constituted a portion of the client's alleged damages.  Although the insured did not raise the illusory policy defense in *Continental Cas. Co.*,  query whether a liability policy does an attorney any good if it does not provide coverage whenever the angry ex-client seeks return of the fees he has paid.  The ex-client would always want the fees repaid. Insured is trying to stick real estate agencies with an illusory policy that never pays because any damages claim against the real estate agency will always include a request for repayment of commissions.

Where an insurance policy is illusory, it is void.  The remedy is that the policyholder is entitled to coverage under the policy as a matter of law.  *Martinez*, *supra*, 134 Idaho at 252-53, 999 P.2d at 907-08.  This Court should enforce this result here, and hold that Aspen Realty is entitled to coverage under the Policy because the coverage it purportedly provides is illusory.  At the least, Aspen Realty has created a question of fact regarding whether the policy is illusory, which precludes summary judgment on each of Insured's four theories.

D.    Insurer's "Known Wrongful Acts" Argument Must be Rejected at Summary Judgment Because Aspen Realty Denies that it Committed Wrongful Acts.

Insurer contends that coverage is precluded in this case because of the "known wrongful acts" exclusion, which provides as follows:

> **Known Wrongful Acts**.  We won't cover loss that results from any wrongful act, including any part of related wrongful acts, that any protected person knew about before the beginning date from which we or any of our affiliated insurance companies have continuously provided this professional services liability protection.

*Insurer's Brief*, p. 14-15.  This Court can easily reject this argument.

DEFENDANT'S RESPONSE TO PLAINTIFF'S SUMMARY JUDGMENT MOTION-10

There are two flaws in Insurer's analysis. The first is that Insurer does not bother to analyze the actual language of the Policy. The second is that Insurer conflates the Bafuses' mere unsupported allegations of wrongful conduct with a finding that Insurer actually engaged in wrongful conduct.

In its Brief, Insurer engages in a wide-ranging discussion of "objective" versus "subjective" standards instead of parsing the Policy language. *Insurer's Brief*, p. 15-16. Insurer skips close analysis because such a review reveals that the Policy language unambiguously does not permit the reading that Insurer urges.

This unambiguous Policy language does not support an "objective" reading. It is a purely subjective test that requires two separate elements of proof – that Aspen Realty took a wrongful act in the past; and that Aspen Realty knew the past act was wrongful.

There are obviously genuine issues of fact regarding whether these tests have been met. Simply stated, Aspen Realty denies that it took any wrongful act. And since it denies that it took any wrongful act, it obviously denies that it knew of the supposed wrongful act.[24] As noted above, "the duty to defend exists so long as there is a genuine dispute over facts bearing on coverage or over the application of the policy's language to the facts." *Constr. Mgmt. Sys., Inc., supra,* 135 Idaho at 682-83, 23 P.3d at 144-45. Because there is a genuine dispute over facts bearing on coverage, there is a genuine dispute regarding Insurer's contention at summary judgment that the Policy exclusion applies.

Insurer's misstep is that it again accepts the Bafuses' meritless allegations of wrongdoing as true. The proper procedure for an insurance company in Insured's

---

[24] *Aspen's SOF*, ¶ 12.

DEFENDANT'S RESPONSE TO PLAINTIFF'S SUMMARY JUDGMENT MOTION-11

position is to defend pursuant to a reservation of rights, and then to demand repayment should the *evidence* subsequently *prove* that Aspen Realty acted wrongfully and knew that it did so.  Insurer is not entitled to assume wrongdoing on Aspen Realty's part that takes the claim out of coverage.  Where there is a chance that the claim is a covered claim, "the insurer must defend regardless of possible defenses arising under the policy . . . ."  *Kootenai County, supra,* 113 Idaho at 910-11, 750 P.2d at 89-90.

The random opinions from outside Idaho upon which Insurer relies to urge an "objective" standard are not on point.  *Insurer's Brief,* pp. 15-16.  In most of those opinions, the courts rule as they do because the language at issue calls for an objective standard.  For example, in *Nat'l Union Ins. Co. v. Holmes & Graven,*[25] the policy raised the question of whether the policyholder "did not know or could not reasonably foresee that" a claim would arise against it.  Obviously, the use of the "reasonably foresee" language establishes an objective standard.  Similarly, in *Home Indem. Co. v. Toombs,*[26] the language at issue questioned whether the policyholder was aware of any claim "that might reasonably be expected" to arise.  In *Mt. Airy Ins. Co. v. Thomas,*[27] the language at issue questioned whether the policyholder "knew or could have reasonably foreseen" that a claim might arise.  The Policy before the Court contains no such language that calls for the application of an objective analysis.

If this Court nonetheless determines that it has to choose between an objective standard and a subjective standard, this means that the policy is ambiguous because it allows for two choices.  In that event, Idaho law requires a subjective standard because

---

[25] 23 F. Supp. 2d 1057, 1066 (D. Minn. 1998).
[26] 910 F. Supp. 1569, 1572-74 (N.D. Ga. 1995).
[27] 954 F. Supp. 1073, 1076 (W.D. Pa. 1997).

DEFENDANT'S RESPONSE TO PLAINTIFF'S SUMMARY JUDGMENT MOTION-12

this is the standard that will most clearly allow for coverage on these facts.  *See pp. 4, 5, supra*.  The subjective standard is also the better law.  *See Estate of Logan v. Northwestern Nat'l Cas. Co.*, 424 N.W.2d 179 (Wisc. 1988).  Insurer provides no citation for its conclusion, at page 15 of its Brief, that courts "generally employ" an objective standard.

Nothing in Insurer's long factual litany, *Insurer's Brief*, pp. 16-17, establishes that Aspen Realty knew that it had done anything wrong.  Instead, as noted above, Aspen Realty knows that it did not do anything wrong.[28]

For all of the above reasons, Insurer is not entitled to summary judgment on the "known wrongful acts" exclusion.

E.    <u>Nothing about the Bafuses' 2000 Disgruntlement Entitles Insurer to Summary Judgment</u>.

The period of the Policy was from March 27, 2005 through March 27, 2006.  It was during this time that the Bafuses' complaint was served on Aspen Realty.[29]  The Policy is a claims-made policy, and so Aspen Realty is entitled to coverage since the Bafuses' claim was made against it during the Policy period.[30]  It is irrelevant that the allegedly wrongful conduct took place in 2000.  The Policy expressly provides that the

---

[28] In this regard, Aspen Realty would point out that the Bafuses' claims which are still pending are antitrust claims, and, in particular, tying claims.  The Court of Appeals for the Sixth Circuit has observed, in the context of tying claims, that "the conduct proscribed by the antitrust laws is often difficult to distinguish 'from the gray zone of socially acceptable and economically justifiable business conduct.'"  *Brown v. Donco Enters.*, 783 F.2d 644, 646 (6th Cir. 1986)(*quoting United States v. United States Gypsum Co.*, 438 U.S. 422, 440 (1978)).  The court called the line between proper and improper business conduct "obscure" except for those actions which are inherently wrongful, such as price-fixing.  *Id*.  For Insured to assert that this Court can rule at summary judgment that Aspen Realty knew that it acted wrongfully is accordingly completely without basis.

[29] *Aspen's SOF*, ¶ 2; *Insurer's SOF*, ¶ 4.

[30] *Aspen's SOF*, ¶ 13.

DEFENDANT'S RESPONSE TO PLAINTIFF'S SUMMARY JUDGMENT MOTION-13

Policy applies with retroactive effect to cover incidents that occurred in the past, so long as the lawsuit was served upon Aspen Realty during the Policy period.[31]

But in yet another attempt to escape its contractual obligation, Insurer argues that the Bafus lawsuit is not covered because the Bafuses first made a claim against Aspen Realty in 2000.  *Insurer's Brief*, p. 9-11.

The Policy provides that it will cover loss that "results in a claim or suit first made or brought against a protected person and reported to us while this agreement is in effect . . . ."[32]  The Policy language that describes when a claim or suit is "first made" reads as follows:

> **When we consider a claim or suit to be first made or brought.**  We'll consider a claim or suit to be first made or brought against a protected person on the earlier of the following dates:
>
> - The date that we or any protected person receives a written notice of such claim or suit.
> - The date that we receive written notice from any protected person of a specific wrongful act that caused the loss which resulted in such claim or suit.[33]

Insurer takes the position that the Bafuses "first" made a claim or suit against Aspen Realty in 2000.  *Insurer's Brief*, pp. 9-12.  This was when the Bafus purchase and sale occurred.  Aspen Realty acknowledges that the Bafuses complained to Aspen Realty about the commission at that time, and that the Bafuses also wrote a letter to the Attorney General of Idaho in 2000 complaining about their transaction.  Insurer's Brief and Statement of Facts summarize the exchange of correspondence that took place in 2000.  (Although Insurer's Brief fails to mention that the Attorney General closed his

---

[31] *Aspen's SOF*, ¶ 13; *Insurer's SOF*, ¶ 5.
[32] *Insurer's SOF*, ¶ 5.
[33] *Insurer's SOF*, ¶ 11.

DEFENDANT'S RESPONSE TO PLAINTIFF'S SUMMARY JUDGMENT MOTION-14

file in 2000 without taking any action on the Bafuses' letters, after concluding that it was a contract dispute between private parties.[34])

Again, however, Insurer's attempt to escape coverage is of no avail.  Insurer's contention that the Bafuses' 2000 letters precludes coverage of the 2004 lawsuit is not sustainable after a proper analysis of the Policy language and the governing law, for two distinct reasons.

1.   **The Bafuses' Actions in 2000 Did Not Constitute a "Claim" as Defined in the Policy.**

The first reason is that the Bafuses' various letters in 2000 do not constitute a "claim" as defined by the Policy.  As is true with respect to the wrongful act exclusion, *see* pp. 10-13, *supra*, Insurer eschews close analysis of its own Policy because the precise language does not support its position.  As Insurer accurately points out, the Policy defines "claim" as a "demand that seeks damages."  *Insurer's Brief*, p. 10. However, Insurer's Brief fails to acknowledge that "damages" is defined as well.  The Policy defines "damages" as "compensatory damages imposed by law."[35]  Putting these two definitions together,  a "claim" becomes a "demand that compensatory damages [be] imposed by law."

Under this definition, the Bafuses' 2000 letters do not constitute a "claim." Obviously, the letters that the Bafuses sent to Aspen Realty do not constitute a demand that compensatory damages be imposed by law.  Aspen Realty could not and would not have the power at law to impose damages against itself.  In their letters to Aspen Realty, the Bafuses do not demand that damages be imposed by law.  Instead they

---

[34] *Aspen's SOF*, ¶ 14.
[35] *Insurer's SOF*, ¶ 9.

merely propose that "[t]he total purchase price . . . be adjusted" so as to reduce the cash the Bafuses were obligated to pay the builder, so that the builder did not have to pay a full commission to Aspen Realty.[36]

The Bafuses' letters consist of an effort to negotiate a lower purchase price on their house, not a demand that damages be imposed by law against anyone.  The Bafuses have admitted as much.  Subsequent to the parties' June 2000 closing, the Bafuses filled out a "Consumer Complaint Form" published by the Attorney General's office.  The form includes the following question:  "What efforts have you (or someone acting on your behalf) made in order to resolve this dispute?"  Renae Bafus answered: "Letters have been written asking to re-negotiate the commission."[37]  A letter requesting reduction of a purchase price for a house falls far short of a "claim" against Aspen Realty as defined in the Policy.

Nor did the Consumer Complaint Form and letters that the Bafuses sent to the Idaho Attorney General in 2000 constitute a demand that damages be imposed by law. In fact, the Attorney General's Consumer Complaint Form makes clear that a consumer's completion of the form *does not* constitute a demand that damages be imposed by law.  Specifically, the form contains a certification, which Renae Bafus signed, reading as follows:

> I understand that the attorney general is not my private
> attorney, but rather represents the public by enforcing laws
> prohibiting fraudulent or deceptive trade practices.  I
> understand that the Consumer Protection Unit of the Idaho

---

[36] *Bannon Aff.*, Ex. 3-A, p. 17 of 47.
[37] *Bannon Aff.*, Ex. 1-E, pp. 51-53 of 58.

Attorney General's Office does not represent private citizens seeking the return of their money or other personal remedies.[38]

Renae Bafus's September 12, 2000 letter to the Attorney General's consumer protection unit further confirms that no "claim" was made. At the end of a very long letter, Bafus states: "In summary, we would of course like our $9,060 back."[39] This polite request again hardly qualifies as a demand that compensatory damages be imposed by law, which the Attorney General's office lacks the authority to "impose" in any event.

In conclusion, then, there is, at least, a genuine issue of material fact whether the Bafuses' two letter writing campaigns in 2000 – conducted without assistance of counsel and without citation to any statutory provision – constituted a demand that compensatory damages be imposed by law. It seems clear to Aspen Realty that the Bafuses did not "first" demand that compensatory damages be imposed by law until they filed their complaint in this Court in 2004.

2.   **The Policy is Ambiguous, and Aspen Realty's Reading of the Contract Must be Favored by this Court.**

If the Court rejects Aspen Realty's analysis in part III.E(1) above, Insurer nonetheless is still not entitled to summary judgment on this issue. This is because the Policy's language is ambiguous, and this Court is obligated to resolve the ambiguity in favor of Aspen Realty. *See* pp. 4, 5, *supra*.

The Policy provisions relate to a "claim *or* suit" (emphasis added).[40] The use of the disjunctive "or" means that a policyholder's claim under the Policy against Insurer

---

[38] *Bannon Aff.*, Ex. 1-E, p. 53 of 58.
[39] *Bannon Aff.*, Ex. 1-F, p. 57 of 58.
[40] *Insurer's SOF*, ¶ 5.

DEFENDANT'S RESPONSE TO PLAINTIFF'S SUMMARY JUDGMENT MOTION-17

can arise in respect of a claim against the policyholder, *or* it can arise in respect of a suit against the policyholder.  "The word 'or' may be used to mark off and separate alternative ideas, and it may indicate one or the other of two or several persons, things, or situations, and not a combination of them.  It often connects a series of words or propositions, presenting a choice of either . . . ."  *Frasier v. Frasier*, 87 Idaho 510, 514, 394 P.2d 294, 297 (1964).

The Policy language at issue then goes on to analyze when the "claim *or* suit" is first "made *or* brought."[41]  Obviously, the Policy employs parallel construction.  A claim is "made"; a suit is "brought."

Aspen Realty would suggest that the use of the disjunctive "or" and parallel construction establishes two tests.  The first test applies to coverage of a claim, and depends on when the claim is "made."  The second test applies to coverage of a "suit," and depends on when the suit is "brought."  Here, Aspen Realty is seeking coverage for a "suit."  Accordingly, the "suit" test applies, and that test for coverage depends on when the suit was brought.  Insurer is mixing apples and oranges.  Notwithstanding that coverage of a suit is at issue, Insurer is trying to apply the "claim" test to Aspen Realty.  However, because Aspen Realty is seeking coverage for the Bafuses' suit, not their claims, when the Bafuses first brought their "claims" is a not a relevant determination under the Policy.

F.    Aspen Realty Concedes that the Bafuses' Complaint After February 28, 2006 Asserts Only Antitrust Claims.

The Policy states as follows:  "**Violation of trade laws**.  We won't cover loss that results from any actual or alleged violation of any securities, anti-trust, or restraint

---

[41] *Insurer's SOF,* ¶ 11.

of trade laws."[42]  Insurer argues that this exclusion entitles it to summary judgment on the entirety of this litigation.  *Insurer's Brief*, pp. 7-9.  However, Insurer paints with much too broad a brush.

On and after February 28, 2006, the Bafuses' complaint asserted only claims for violation of section 1 of the Sherman Act and violation of the Idaho Competition Act, I.C. § 48-101 et seq.[43]  Aspen Realty concedes that the complaint pending since that date only alleges violation of antitrust laws.

Aspen Realty would contend that Insured is nonetheless not entitled to summary judgment on the antitrust exclusion.  This is because, as alleged in section III.C above, there is a genuine issue of fact regarding whether the Policy is illusory (if the Court applies the commission exclusion).  If, however, the Court rejects application of either the commissions exclusion or the illusory policy doctrine, then Aspen Realty concedes that Insurer's duty to defend and indemnify ceased as of February 28, 2006.

Still remaining at issue, however, would be whether St. Paul had an obligation to defend Aspen Realty under the Policy from the time the Bafus complaint was served on Aspen Realty in 2005 until February 28, 2006.  During this time, claims other than the antitrust claims were pending against Aspen Realty.  Aspen Realty incurred tens of thousands of dollars of attorneys' fees in defending the Bafus Litigation prior to February 28, 2006.[44]

For the reasons argued in sections III.D and III.E above, Insured is not entitled to summary judgment on its "known wrongful act" argument or on its argument that the

---

[42] *Insurer's SOF*, ¶ 14.
[43] *Bannon Aff.*, Ex. 1-C, pp. 29-47 of 58.
[44] *Aspen's SOF*, ¶ 15.

Bafus claim preceded the Policy period.  This lawsuit must accordingly remain pending so that Aspen Realty can prosecute its claim for attorneys' fees incurred prior to February 28, 2006.  Insurer has not moved for summary judgment on the question of whether the Bafuses' Real Estate Settlement Procedures Act claim and their Idaho Consumer Protection Act claim are covered claims under the Policy, meaning that Aspen Realty is entitled to continue to seek coverage under the Policy for those claims.

## IV.  CONCLUSION.

For the reasons set forth above, Insurer's arguments are misguided.  The commission exclusion either does not apply, or, if it does, it renders the Policy illusory, with the result that all four of Insured's arguments fail as a matter of law.  To the extent that the this Court concludes that either the commissions exclusion or the illusory policy doctrine does not apply, then it must go on to reject Insurer's summary judgment arguments on the prior wrongful acts exclusion and the argument that the Bafus claim preceded the policy period.  This will leave Aspen Realty in a position to prosecute its argument that Insured had a duty to defend the Bafus Litigation prior to February 28, 2006.

DATED this 10th day of October, 2006.

HOLLAND & HART LLP


By _____/s/_____
        Robert A. Faucher, of the firm
        Attorneys for the Defendant Aspen Realty,
        Inc. d/b/a Coldwell Banker Aspen Realty

# CERTIFICATE OF SERVICE

I hereby certify that on October 10, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

Christopher J. Bannon
cbannon@agdglaw.com

Larry C. Hunter
lch@moffatt.com

AND I FURTHER CERTIFY that on such date I served the foregoing on the following non-CM/ECF Registered Participants in the manner indicated :

Via first-class mail, postage prepaid addressed as follows:

Howard Fishman
ARONBERG GOLDGEHN DAVIS &
GARMISA
219 S. Dearborn Street
Chicago, IL 60604

_____/s/ Robert A. Faucher_____
for HOLLAND & HART LLP

3614118_4.DOC

DEFENDANT'S RESPONSE TO PLAINTIFF'S SUMMARY JUDGMENT MOTION-21