Larry C. Hunter, ISB No. 1989
MOFFATT, THOMAS, BARRETT, ROCK &
FIELDS, CHARTERED
101 S. Capitol Blvd., 10th Floor
Post Office Box 829
Boise, Idaho  83701
Telephone (208) 345-2000
Facsimile (208) 385-5384
lch@moffatt.com

Christopher J. Bannon
ARONBERG, GOLDGEHN, DAVIS & GARMISA
330 North Wabash Avenue, Suite 3000
Chicago, IL  60611
Telephone (312)828-9600
Facsimile (312) 222-6375
cbannon@agdglaw.com

Attorneys for Plaintiff St. Paul Fire & Marine
Insurance Company

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ST. PAUL FIRE & MARINE INSURANCE COMPANY,<br><br>    Plaintiff,<br><br>vs.<br><br>ASPEN REALTY, INC., d/b/a COLDWELL BANKER ASPEN REALTY,<br><br>    Defendant. | Civil No. CIV 05-355-S-MHW |

**PLAINTIFF'S REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

I.        REPLY TO ADDITIONAL FACTS

In Aspen's Statement of Facts Pursuant to Local Rule 7.1(c)(2) ("Aspen SOF") and in its Response to St. Paul's Motion for Summary Judgment ("Response"), Aspen concedes all material facts identified in St. Paul's Rule 7.1(b)(1) Statement of Uncontested Material Facts in Support of its Motion for Summary Judgment ("St. Paul SOF"), with the exception of paragraphs 19 through 21.[1] In the Aspen SOF, Aspen also identifies additional facts, which it apparently contends are "disputed" facts as contemplated by Local Rule 7.1(c)(2). As more fully discussed in this Reply, several of the "disputed" facts actually constitute nothing more than unsupported legal conclusions, and others are based entirely on mere speculation. Most importantly though, the additional facts simply are not relevant to this motion. Therefore, the Court may refer to the St. Paul SOF for the only facts necessary for the Court's declaration.

II.        ARGUMENT

**A. The Trade Law Exclusion Applies To The Pending Bafus Litigation, and St. Paul Therefore Has No Current Duty To Defend Or Indemnify.**

In its Response, Aspen concedes (as it must) that on and after February 28, 2006, the Bafus Complaint[2] asserts *only* claims for violations of antitrust laws, namely Section 1 of the Sherman Act and the Idaho Competition Act. Aspen further concedes that the Court should find that St. Paul has no duty to defend Aspen in the Bafus Litigation *unless* the Policy's "fees and commissions" exclusion applies *and* Aspen somehow prevails on its argument that the Policy's fees and commissions exclusion renders coverage illusory. (Resp. § III.C.) Aspen concludes

---

[1] Paragraphs 19 through 21 of the St. Paul SOF described the allegations made and relief sought in the underlying Bafus Litigation. While Aspen may deny the truth of the underlying allegations, which apparently is why it would not admit St. Paul SOF paragraphs 19 through 21, it surely cannot dispute that those allegations were indeed made in the underlying Bafus Litigation. In any event, the record in this case includes copies of the Bafus pleadings (Exhibits 1-B and 1-C to Bannon Affidavit) and the Court can certainly confirm that they contain the allegations described in St. Paul SOF ¶¶ 19-21.

[2] St. Paul incorporates the defined terms used in the Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment ("St. Paul Brief").

**PLAINTIFF'S REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**      - 1 -

that "if, however, the Court rejects application of either the commissions exclusion or the illusory policy doctrine, then Aspen Realty concedes that [St. Paul]'s duty to defend and indemnify ceased as of February 28, 2006." (Resp. 19.) For reasons discussed in section II.B.2 below, Aspen's "illusory coverage" argument has no merit and the Court should summarily reject it. St. Paul is therefore entitled, at the outset, to a declaration that it has no duty to defend or indemnify Aspen for the Bafus Litigation as of February 28, 2006.

**B. St. Paul Had No Duty To Defend Aspen in the Bafus Litigation Prior To February 28, 2006.**

St. Paul also had no duty to defend Aspen prior to February 28, 2006, for several reasons. First, the claim asserted in the Bafus Litigation was clearly first made against Aspen *before* the effective date of the Policy. Second, the loss alleged in the Bafus Litigation results from Aspen's commissions, and is therefore excluded from the Policy's coverage. Finally, Aspen obviously knew about the omissions alleged in the Bafus Litigation well before St. Paul began providing insurance coverage to Aspen, and the Policy excludes the resulting loss.

    **1. The Bafuses First Made the Claim Asserted in the Bafus Litigation Before the Policy Period.**

St. Paul's Brief clearly demonstrated that the claim asserted in the Bafus Litigation was first made against Aspen before the Policy period began. Consequently, the Policy affords no coverage. Aspen offers no factually or legally supportable basis for its view that the claim was instead brought within the Policy period.

        **a. Aspen Made Demands for Compensation in 2000.**

In its Response, Aspen blatantly misstates the Policy's language to invent Aspen's own definition of the term "claim". According to Aspen's creative manipulation of Policy wording, when one combines the Policy definitions of "claim" and "damages," the resulting new definition of "claim" is a "demand that compensatory damages [be] imposed by law." (Resp. 15.)

**PLAINTIFF'S REPLY IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**     - 2 -

In reality though, when one combines the two definitions, the result is a "demand that seeks compensatory damages imposed by law."[3]  In other words, using Aspen's logic of combining Policy definitions, a claim is actually a demand for money to compensate the claimant.

Throughout 2000, the Bafuses sought money to compensate them for what they believed to be Aspen's wrongful acts.  They repeatedly accused Aspen of wrongful conduct, i.e. dishonesty, failure to deal fairly and misrepresentation of facts, and demanded compensation.  Even Aspen admits that the Bafuses, through their June 2000 letters, sought money from Aspen, i.e. payment or credit from Aspen that would lower the purchase price on the Property.  (Resp. 16.)  Clearly, the Bafuses made demands for money to compensate them, and Aspen's assertions to the contrary ring hollow.

Aspen's attempt to minimize the nature of the Attorney General Complaint is equally unpersuasive.  Indeed, the very language Aspen quotes from the Attorney General Complaint ("In summary, we would of course like our $9,060 back") makes clear that the Bafuses sought payment of money to compensate them.  Whether or not the Attorney General had authority to obtain that money from Aspen is of no consequence.  The Bafuses, through the Attorney General Complaint, reiterated their prior demands for payment of the $9,060 commission amount.

        b.        **The Policy Language Regarding Claims First Made is Clear and Unambiguous.**

Aspen's "ambiguity" argument with regard to the Bafus' prior claim is also meritless.  Apparently recognizing the flaws in its substantive argument, Aspen asserts that the Policy provisions are ambiguous because they somehow create "two tests" for "claims" and "suits."  Contrary to Aspen's contention, the Policy language describing when claims and suits are

---

[3] The Policy definition of "claim" is "a demand that seeks damages."  The policy definition of "damages" is "compensatory damages imposed by law."

**PLAINTIFF'S REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**   - 3 -

considered made and brought is not *reasonably* subject to more than one interpretation.[4] Nothing in the Policy exclusion suggests that a "claim" is, as Aspen would have it, somehow isolated from a later suit filed by the same claimants. To do so would transform the Policy into something other than "claims-made" coverage, which is premised on the notion that claims are covered, if at all, only if they are first made during the policy period.[5] Pursuant to clear Policy language, if a claim is made in year one, it is not covered under a policy applying to a subsequent year during which that claim becomes part of a lawsuit. Here, the Bafus claim was first made in 2000, and the same claim forms the basis of the suit brought against Aspen in 2005.

### 2. The Policy's Fees and Commission Exclusion Applies to the Bafus Litigation.

Under the Policy's terms, any loss that results from commissions is excluded from coverage. Of course, in analyzing the fees and commissions exclusion's application, the Court considers only the allegations contained within the four corners of the Bafus Complaint. *See Hoyle v. Utica Mut. Ins. Co.*, 48 P.3d 1256, 1262 (Idaho 2002); s*ee also AMCO Ins. Co. v. Tri-Spur Inv. Co.*, 101 P.3d 226, 231 (Idaho 2004) (where the allegations of the complaint demonstrate policy exclusion application, insurer need not look beyond such allegations even though extrinsic facts might have revealed other potential causes of action). Thus, Aspen's extraneous assertions and factual submissions about who actually paid the commission (and who customarily pays commissions) are all irrelevant to this Court's analysis.

---

[4] Idaho law is clear that policy language may be found ambiguous only if it is *reasonably* susceptible to more than one interpretation. *AMCO Ins. Co. v. Tri-Spur Inv. Co.*, 101 P.3d 226, 232 (Idaho 2004) (emphasis added).

[5] Aspen SOF, at ¶ 13, also mischaracterizes the Policy's coverage. Aspen asserts there that the Policy covers "incidents that occurred in the past, so long as the lawsuit was served upon Aspen Realty during the policy period and Aspen Realty gave notice to the insurer during the policy period." The Policy clearly provides that, among other things, the claim must first be made within the policy period in order to invoke coverage, regardless of when a lawsuit is served.

**PLAINTIFF'S REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT      - 4 -**

### a. The Bafuses' Claims Focus on Aspen's Commission.

It is undisputed that Aspen received a commission. The Bafuses' claims are premised entirely on the allegation that the commission paid to Aspen was inflated by the price of the house to be built on the lot they purchased. The Bafuses request that the inflated commission be paid to them, regardless of who paid it to Aspen in the first instance. Clearly then, any potential loss to Aspen in the Bafus Litigation would be a result of the alleged inflated commission, as that is the focus of their claims. Thus, the loss must be excluded from coverage under the Policy because it "results from … commissions or other charges for [Aspen's] real estate professional services."

Once again recognizing the weakness of its substantive argument, Aspen attempts to muddy the clear language of the fees and commissions exclusion by claiming that the term "results from" is ambiguous. To the contrary, the term "results from" is clear and unambiguous, as it is not reasonably susceptible to more than one interpretation. *See AMCO Ins. Co.,* 101 P.3d at 232. Words in an insurance policy that have a settled legal meaning are not ambiguous merely because they are not defined in the policy. *Nat'l Union Fire Ins. Co. of Pittsburgh v. Dixon*, 112 P.3d 825, 828 (Idaho 2005). The common ordinary meaning of the word "result," is "to happen or issue as a consequence, or effect: often with *from*." WEBSTER'S NEW WORLD DICTIONARY 1223 (4th ed. 1999). Surely, the loss alleged in the Bafus Litigation happened as a consequence or effect of the commission the Bafuses claim was inflated.

### b. Aspen's "Illusory Coverage" Argument is Meritless.

In yet another attempt to obfuscate, Aspen next asks the Court to void the Policy, claiming that the fees and commissions exclusion renders coverage illusory. Aspen's unsupportable rationale for this argument is that claims against real estate agents will "typically" arise from transactions that close, where the agent or broker earns a commission and the claim

**PLAINTIFF'S REPLY IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**      - 5 -

for damages would involve repayment of that commission. (Resp. 8.)[6] Once again, Aspen's assertion has no merit.

Under Idaho law, an insurance policy's coverage is illusory and violates public policy only when it appears that, if any actual coverage exists, it is extremely minimal and affords no realistic protection to any group or class of injured persons. *See Martinez v. ICRMP*, 999 P.2d 902, 907 (Idaho 2000); *see also Am. Foreign Ins. Co. v. Reichert*, 94 P.3d 699, 704 (Idaho 2004), citing *Vincent v. Safeco Ins. Co. of Am.*, 29 P.3d 943, 947-48 (Idaho 2001). However, policies that are approved by the Director of the Department of Insurance are presumed to be in accordance with public policy. *Reichert*, 94 P.3d at 704. Absent an assertion to the contrary, it is presumed that a policy was submitted to and approved by the Director. *Id.* Aspen offers no assertion to the contrary here, and the Policy is thus presumed to be in accordance with public policy.

Moreover, the authority Aspen cites in attempting to support its "illusory coverage" argument is clearly distinguishable from this case. In *Martinez*, the principal case on which Aspen relies, the City purchased an insurance policy that was to include uninsured/underinsured motorist coverage. 999 P.2d at 906. However, the policy stated that uninsured motorist coverage was extended to those states that require it, but not extended to those in states that did not. *Id.* at 905. Because Idaho did not require uninsured motorist coverage, the court found that the City had purchased a policy for uninsured motorist coverage that, by its own language, did not cover uninsured motorists. *Id.* at 905-06. Thus, the Court found that the policy was ambiguous. The *Martinez* court also found that any uninsured motorist coverage afforded by the

---

[6] Aspen's purported factual support for this argument (Aspen SOF ¶ 11 and Laraway Aff. ¶ 11) actually amounts to nothing more than pure speculation. In his affidavit, Mr. Laraway surmises that he "*would expect* that any complaints that customers might have…would arise out of deals that close. (Laraway Aff. ¶ 11) (emphasis added). This falls far short of a factual support for Aspen's argument.

**PLAINTIFF'S REPLY IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**   - 6 -

policy only extended to employees, but the policy excluded those employees who could file a worker's compensation claim. *Id.* at 907. As most, if not all, employees can file a worker's compensation claim for injury on the job, the policy coverage was held to be illusory. *Id.*

Unlike the policy language at issue in *Martinez*, the Policy's fees and commission exclusion is unambiguous and, moreover, would certainly not bar coverage for every, or almost every, claim against every real estate agent or broker insured under the Policy. The fact that brokers receive commissions in many deals simply does not mean that loss alleged in a later claim "results from" the commission. Surely, when the claimant requests return of the commission or the allegations of the claim focus on the commission, the loss "results from" the commission, as is the case here. But not even Aspen contends that this type of request is made in all, or even most, claims against real estate agents and brokers. Moreover, some errors and omissions claims against real estate agents or brokers may arise out of real estate deals that *never* close, and thus, no commission is paid. For example, a customer may claim that a broker's error, omission or negligent act caused the deal to fall through, resulting in damages to the customer for a lost sale or purchase. Brokers and agents may also face liability for negligence or negligent misrepresentation claims when they fail to obtain earnest money or other security in deals that do not close.[7] Other claims may involve allegations that the broker committed a "personal injury offense" or "advertising offense" in the course of providing real estate professional services.[8] Contrary to Aspen's assertions, there are many types of claims that may arise out of real estate

---

[7] *See Roy H. Long Realty Co., Inc. v. Vanderkolk*, 547 P.2d 497, 499-500 (Ariz. Ct. App. 1976) (broker liable to seller for negligent misrepresentation in connection with offer on real estate sale that did not close); *Merkley v. MacPherson's Inc.*, 420 P.2d 205, 207 (Wash. 1966) (broker liable to seller for negligence in failing to obtain promissory note to serve as earnest money.)

[8] "Personal injury offense" and "advertising offense" are two types of conduct that are within the Policy's definition of "wrongful act." The Policy defines both "personal injury offense" and "advertising injury" to include, among other things, libel, slander, disparagement, and invasion of privacy rights. These types of claims certainly are not contingent on the involvement of a commission.

**PLAINTIFF'S REPLY IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT    - 7 -**

broker's conduct but are not premised on, seek the return of, or "result from" the broker's commission.

In sum, the Policy's fees and commission exclusion in no way renders the Policy's coverage illusory, and it applies here to bar coverage for any loss resulting from the Bafus Litigation.[9]

### 3. The Loss Results From Wrongful Acts Aspen Knew About Before St. Paul Began Providing Insurance to Aspen.

Aspen's arguments regarding the Policy's "known wrongful acts exclusion" ignore the actual language of the Policy and the undisputed facts establishing Aspen's knowledge in 2000. Contrary to Aspen's assertions in its Response, it is irrelevant whether Aspen knew at that time that it "engaged in wrongful conduct." Understandably, Aspen denies in the Bafus Litigation that its alleged conduct was "wrongful," as it certainly does not wish to be found liable in that litigation. However, application of this exclusion does not hinge on Aspen's beliefs about what is or is not "wrongful" in nature. Rather, the exclusion bars coverage when the protected person knew about an "error, omission or negligent act" before the relevant date.[10]

Here, Aspen does not dispute that certain "omissions" gave rise to an ongoing dispute with the Bafuses beginning in 2000. Aspen freely acknowledges that the Bafuses, through their June 2000 letter and the Attorney General Complaint, claimed that Aspen should have reduced its commission or paid to the Bafuses a sum of money in the amount of that commission. It is undisputed that Aspen did not reduce that commission or pay the Bafuses pursuant to their

---

[9] Again, because Aspen's "illusory coverage" argument fails, Aspen has no basis whatsoever to qualify its concession that St. Paul has no duty to defend or indemnify Aspen for the Bafus Litigation after February 28, 2006.

[10] The exclusion at issue here relates to loss that results from "any wrongful act…that any protected person knew about…". The Policy defines the term "wrongful act" as any "error, omission or negligent act."

**PLAINTIFF'S REPLY IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**     - 8 -

requests. This failure to reduce the commission is but one of the omissions constituting the basis of the Bafuses' claim and suit.[11]

Aspen cannot deny that it knew of the omissions forming the basis of the Bafuses' claims and the Bafus Litigation when Aspen first obtained St. Paul insurance coverage in 2001. In 2000, Aspen acknowledged, in writing, that it expected the Bafuses to "go after [their] commissions." After multiple letters to Aspen requesting a return of the commission paid to Aspen, the Bafuses filed the Attorney General Complaint stating that they would like the return of money in the exact amount of the commission Aspen received. In that Attorney General Complaint, which Aspen received in 2000, the Bafuses set forth the claims they later brought in the Bafus Litigation. Aspen confirmed its knowledge of the ongoing commission dispute with the Bafuses in a letter to the Attorney General dated December 6, 2000, indicating that the commission issue was a "contract dispute" between the parties. Moreover, Aspen now acknowledges its receipt of a copy of the Attorney General's December 26, 2000 letter to Renae Bafus. (Aspen SOF ¶ 14, Laraway Aff. Ex. F.) In that letter, the Attorney General suggested that the Bafuses contact private counsel to assist them with this "dispute." Of course, the Bafuses previously confirmed in their June 22, 2000 Letter to Aspen that they "intend[ed] to vigorously pursue every available option to prevent this from happening to other innocent consumers."

In light of all of the undisputed material facts, Aspen may not in good faith contend that it did not know of the omissions forming the bases of the Bafus' claim and suit, including the failure to reduce or return the commission Aspen received in June 2000. Having received and

---

[11] Aspen also cannot dispute that in calculating the commission it would receive, it did not separate the cost of the lot from the cost of the house to be built, as the Bafuses contend. This is yet another "omission" about which Aspen was well aware in 2000.

**PLAINTIFF'S REPLY IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT    - 9 -**

acknowledged the many letters written in 2000, as well as the Attorney General Complaint, Aspen clearly knew of the ongoing dispute with the Bafuses long before March 27, 2001, when St. Paul first provided liability insurance to Aspen. Consequently, the "known wrongful acts" exclusion applies and the Policy affords no coverage here.

### III. CONCLUSION

Aspen has raised no genuine issue of material fact or offered any valid legal argument to defeat St. Paul's Motion for Summary Judgment. St. Paul is therefore entitled to a declaratory judgment that (1) it does not have, and never had, a duty to defend Aspen for the Bafus Litigation and (2) it has no duty to indemnify Aspen for any judgment or settlement in connection with the Bafus Litigation.

Respectfully submitted this 24th day of October, 2006.

St. Paul Fire & Marine Insurance Company


By: *s/Christopher J. Bannon*
Christopher J. Bannon
Aronberg Goldgehn Davis & Garmisa
330 North Wabash Avenue, Suite 3000
Chicago, Illinois 60611
(312) 828-9600

Larry C. Hunter, ISB No. 1989
Moffatt, Thomas, Barrett, Rock &
    Fields, Chartered
101 S. Capitol Blvd., 10th Floor
Boise, Idaho  83701
Telephone: (208) 345-2000

*Attorneys for Plaintiff*

\ 419036.v1

## CERTIFICATE OF SERVICE

   I HEREBY CERTIFY that on this 24th day of October, 2006 I caused a true and correct copy of the foregoing PLAINTIFF'S REPY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT to be electronically filed with the Clerk of the Court using the CM/ECF system, which sent a Notice of Electronic Filing to the following persons:

| | |
|---|---|
| B. Newal Squyres | Christopher J. Bannon |
| Robert A. Faucher | Howard J. Fishman |
| Kevin C. Braley | ARONBERG, GOLDGEHN, DAVIS & GARMISA |
| HOLLAND & HART, L.L.P. | 330 N. Wabash Avenue |
| 101 South Capital Boulevard, Suite 1400 | Suite 3000 |
| P.O. Box 2527 | Chicago, Illinois 60611 |
| Boise, Idaho 83701-2527 | |

                    */s Larry C. Hunter*_____
                    Larry C. Hunter