IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |
|---|---|
| ST. PAUL FIRE & MARINE INSURANCE COMPANY,<br><br>                  Plaintiff,<br><br>v.<br><br>ASPEN REALTY, INC., d/b/a COLDWELL BANKER ASPEN REALTY,<br><br>                  Defendant. | CASE NO.  CV 05-355-S-MHW<br><br>**MEMORANDUM DECISION<br>AND ORDER** |

Currently pending before the Court for its consideration is Plaintiff St. Paul Fire & Marine Insurance Company's Motion for Summary Judgment (docket # 15), filed August 28, 2006. After fully considering the positions of the parties, the Motion for Summary Judgment will be granted.

**<u>Memorandum Decision</u>:**
**I.**
**Background.**

This is a declaratory judgment action brought by insurance company St. Paul Fire & Marine Insurance Company ("St. Paul") against its insured, Aspen Realty, Inc., d/b/a Coldwell Banker Aspen Realty ("Aspen"). St. Paul provided real estate professional services liability

**Memorandum Decision and Order - Page 1**

protection insurance policies of the "claims made" type to Aspen, beginning coverage with a policy that ran from March, 2001, through March, 2002. The policies were subsequently renewed each year through March, 2006. At issue in this case is the policy issued for the March, 2005 to March, 2006.

The genesis of this action arises another case currently pending in this District, entitled *Bafus v. Aspen Realty, Inc., et al.*, Case No. CV 04-121-S-BLW ("*Bafus*"). The Bafuses are home buyers who are suing on behalf of themselves and others similarly situated for violations of federal and state antitrust and unfair trade laws. More specifically, the Bafuses allege that, in March, 2000, they went to the Chaumont subdivision in Eagle, Idaho and picked out a lot that they wanted to build a house on. They then contacted the listing agency, Aspen Realty, and negotiated a price of $34,000 for the lot. On March 14, 2000, when the Bafus's offer was written up by the realtor on a standard "purchase and sale agreement/earnest money" form, it included not only the price of the lot, but also the cost of the house they were going to have built by Walker Building, for a total amount of $151,000. There was no mention in this document of the realtor's commission. The Bafuses also signed an "Exclusive Buyer Representation Agreement" on March 14, 2000, in which it was disclosed that the broker's commission rate was 6% and that the Seller (Walker Building) would be requested to pay the commission at closing. It was not until some point later that the Bafuses realized that Aspen was seeking a 6% commission on the total amount of the lot plus house to be built ($151,000), or $9,060.00. The Bafuses agreed that Aspen earned a 6% commission on the sale of the lot in the amount of $2040, but they disputed the additional amount of the commission being demanded in the amount of $7020 on the house that was to be built, and asserted that this artificially inflated the

cost of their house because Aspen did not perform any services to earn a commission related to the construction of the house.

The Bafuses eventually brought suit against Aspen in the District of Idaho on behalf of themselves and others similarly situated. Because the underlying *Bafus* litigation and the instant litigation are somewhat intertwined, a time line of events provides the simplest means of presenting the facts, which in turn assist in understanding the arguments here:

| | |
|---|---|
| **March 14, 2000:** | Bafuses entered into a Purchase and Sale/Earnest Money Agreement to buy a lot and the construction of a home thereon by Walker Building, the "Seller," for a total purchase price of $151,000. |
| **June, 2000:** | When the real estate purchase was scheduled to close on June 23, 2000, the Bafuses sent letters to Aspen employees questioning the amount of commission claimed on the lot and the house to be to be built, arguing that they should only have to pay the amount of commission due on the sale of the lot. |
| | Aspen employees Stan Thomas (the real estate agent for the transaction) and Aspen manager, Terry Torrence, responded and acknowledged the inquiry, but refused to reduce the commission, and suggested that the Bafuses consult an attorney. |
| **June 23, 2000:** | The Bafuses closed on the real estate purchase based on the $151,000 purchase price. The closing statement for the buyers, the Bafuses, does not reflect that they paid any real estate broker's commission. The closing statement for the "seller," Walker Building, reflects that the seller paid a commission in the amount of $7,927.50 to Aspen and $1,132.50 to "associated brokers."[1] |
| **July 1, 2000:** | The Bafuses file a complaint form with the Consumer Protection division of the Idaho Attorney General's ("AG") Office. |

---

[1]   It turns out that the Bafuses moved to Boise from Washington state and they were formally referred to Stan Thomas of Aspen Realty by Darl Roberts, who is Mr. Bafus's step-father. The referral to Stan was so that he would act as a buyer's agent and assist the Bafuses to locate housing in the Treasure Valley. As a result of this formal referral, Darl Roberts received a percentage of the selling real estate agent's commission. This is reflected in the Seller's closing statement as a "debit" to "associated broker commission" and in the Buyer's closing statement as a "credit" for "associated brokers referral fee."

**Memorandum Decision and Order - Page 3**

**September 12, 2000:** In a response to a request for additional information, the Bafuses sent an "addendum letter" to Deputy Attorney General Brett Lange, explaining the transaction in detail and demanding the return of $9060 in excess commission.

**November, 2000:** The AG sent a letter to Aspen, outlining the Bafus's consumer complaint and attaching copies of the Bafus's letter submitted in response to the AG's requested for more information. The AG requested Aspen's response.

**December 6, 2000:** Aspen's manager, Terry Torrence, sends a response to the AG, disputing the Bafus's claim.

----> **NOTE:** St. Paul asserts that by at least this date, Aspen was on notice of the Bafus's claim, if not earlier.

**March 27, 2001:** St. Paul issued the first real estate professional liability insurance policy to Aspen.

----> **NOTE:** St. Paul asserts that this is *after* Aspen received the letters in which the Bafuses complained about Aspen's conduct and sought return of $9060 in commission.

**March 12, 2004:** Bafuses filed the underlying suit in the District of Idaho, Case No. CV 04-121-S-BLW. There, Coldwell Banker is incorrectly named as a defendant, rather than Aspen Realty.

**March 27, 2005:** The date on which St. Paul issued the professional liability policy under which Aspen now seeks coverage for the *Bafus* litigation.

**August 18, 2005:** A second amended complaint was filed in *Bafus* which names Aspen Realty, Inc., d/b/a Coldwell Banker, as a defendant. Aspen accordingly submitted the complaint to St. Paul with a request that it provide Aspen with a defense and coverage for the claims raised in the *Bafus* suit. St. Paul responded and agreed to provide a defense subject to a full reservation of rights to deny/limit coverage pursuant to the terms of the policy.

**August 30, 2005:** St. Paul files this action against its insured, Aspen.

**February 28, 2006:** Following Judge Winmill's ruling on the Defendants' motions to dismiss and to sever, the Third Amended Complaint was filed in *Bafus*.

In the underlying *Bafus* suit, Judge Winmill dismissed a number of the Plaintiffs' initial claims and severed the cases.[2] In the Third Amended Complaint filed on behalf of the Bafuses, two claims are alleged: a) Count I alleges a violation of Section 1 of the Sherman Act, 15 U.S.C. § 1; and b) Count II alleges that Aspen violated the Idaho Competition Act, Idaho Code § 48-101, *et seq.,* which is Idaho's version the Sherman Act.

The Sherman Act allegations in *Bafus* concern *per se* violations by Aspen arising out of its alleged unlawful conduct by engaging in illegal tying arrangements and price fixing, which allowed Aspen to create a monopoly position. Under federal antitrust law, "tying arrangements" occur when a party agrees to sell one product but only on the condition that the buyer also purchase another different and separate product. Tying arrangements are *per se* violations of the Sherman Act.

In *Bafus*, Plaintiffs allege that in order to buy a lot in the subdivision, they had to pay a commission on services for the cost of the house to be built as well as a commission based on services associated with buying the lot. According to the Bafuses, this arrangement had the effect of fixing the price of housing for buyers at a higher level than would otherwise occur, and therefore constitutes a *per se* violation of the Sherman Act.

## II.
## Standard of Review.

Motions for summary judgment are governed by Fed. R. Civ. P. 56. Rule 56, which provides in pertinent part, that judgment "shall be rendered forthwith if the pleadings,

---

[2] The original case contained four class representatives and four separate real estate brokerage firms. Judge Winmill found that, although the Plaintiffs' claims were the same or similar, they did not arise out of the same or series of transactions and, therefore, that the cases should be severed into four separate cases. Each of the four cases is framed as a potential class action.

**Memorandum Decision and Order - Page 5**

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[3]

The United States Supreme Court has made it clear that under Rule 56, summary judgment is required if the nonmoving party fails to make a showing sufficient to establish the existence of an element which is essential to his case and upon which he/she will bear the burden of proof at trial.[4] If the nonmoving party fails to make such a showing on any essential element of his case, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."[5]

Under Rule 56 it is clear that an issue, in order to preclude entry of summary judgment, must be both "material" and "genuine." An issue is "material" if it affects the outcome of the litigation. An issue is "genuine" when there is "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth

---

[3] Fed. R. Civ. P. 56(c).

[4] *See Celotex Corp. v. Citrate*, 477 U.S. 317, 322 (1986).

[5] *Id.* at 323. *See also* Rule 56(e).

**Memorandum Decision and Order - Page 6**

at trial,"[6] or when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party."[7] The Ninth Circuit cases are in accord.[8]

### III.
### St. Paul's Motion for Summary Judgment.

**1.      Introduction.**

St. Paul asserts that it is entitled to summary judgment because the policy it issued to Aspen, effective March 27, 2005, through March 27, 2006, does not provide coverage for the allegations contained in the underlying *Bafus* suit on the following four grounds:

> 1)      In the pending Complaint in the Bafus Litigation, the Bafuses allege only claims for violation of antitrust and restraint of trade laws, and the Policy excludes coverage for loss that results from actual or alleged violations of such laws;
>
> 2)      The Bafuses' claim was first made against Aspen no later than December, 2000, long before St. Paul provided insurance coverage to Aspen, and therefore does not constitute a claim first "made" during the policy period;
>
> 3)      Any loss from the Bafus Litigation would result from Aspen's fees, commissions or other charges for its services, and the Policy does not afford coverage for such loss; and
>
> 4)      Aspen knew about the wrongful acts alleged in the Bafus Amended Complaint before March 27, 2001, when St. Paul first provided professional services liability protection to Aspen, and the Policy does not cover loss that results from such acts.

(Plaintiff's Motion for Summary Judgment, docket # 15, filed August 28, 2006, at page 3.)

---

[6]     *Hahn v. Sargent*, 523 F.2d 461, 463 (1st Cir. 1975) (quoting *First Nat'l Bank v. Cities Serv. Co., Inc.,* 391 U.S. 253, 289 (1968)), *cert. denied,* 425 U.S. 904, 96 S. Ct. 1495, 47 L.Ed.2d 754 (1976).

[7]     *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L.Ed.2d 202, 212 (1986).

[8]     *See British Motor Car Distributors, Ltd. v. San Francisco Automotive Industries Welfare Fund*, 882 F.2d 371 (9th Cir. 1989).

**Memorandum Decision and Order - Page 7**

St. Paul seeks a declaratory judgment in its favor finding that it has no duty to defend, that it has no duty to indemnify, and that it is entitled to be reimbursed for the defense costs it has expended so far.

**2.      Trade laws policy exclusion.**

In the subject policy, under "exclusions," it provides:

> **Violation of trade or consumer protection laws.**  We won't cover loss that results from any actual or alleged violation of any securities, anti-trust, restraint of trade, unfair or deceptive practices, unfair competition, or other consumer protection law.

(See Exhibit A to St. Paul's Second Amended Complaint, docket # 12-2, filed July 11, 2006, at page 35.)

This particular policy included a "Violation of Trade Laws Exclusion Endorsement," which replaced the above language and arguably has the effect of broadening the coverage in favor of the insured.  However, St. Paul asserts that even if this endorsement broadens coverage, the *Bafus* litigation is still not covered under the policy.  The endorsement states:

> **Violation of trade laws.**  We won't cover loss that results from any actual or alleged violation of any securities, anti-trust, or restraint of trade laws.

(*Id.* at page 40.)

There are only two claims alleged in the underlying *Bafus* suit which form the basis for Aspen's request for coverage under the St. Paul policy issued on March 27, 2005.[9]  The first claim is brought under the Sherman Act, and the second claim is brought under the Idaho Competition Act, which is patterned after the federal Sherman Act.  The allegations contained in

---

[9] Aspen argues that the policy is illusory and therefore void because it insured against no risk.  If the policy is void, then obviously the exclusion for trade law violations would not apply.  This argument is more fully addressed under the discussion of the application of the loss of commissions exclusion, *supra*.

the Bafus's third amended complaint under both counts expressly assert restraint of trade, price fixing, and anti-trust violations of state and federal law, which are the type of claims that the policy expressly excludes coverage. The reasoning behind the insurance industry's exclusion of coverage for violation of trade laws is that such violations are viewed as deliberate acts, not accidental or inadvertent, which takes the conduct out of the category of calculable risk. *See Curtis-Universal, Inc. v. Sheboygan E.M.S., Inc.*, 43 F.3d 1119, 1125 (7th Cir. 1994).

Under the circumstances presented by the claims arising out of the *Bafus* litigation, it is clear that the claims alleged there are both related to violation of trade laws. Even under the arguably broader coverage allowed by the endorsement to the March 27, 2005, policy, it is clear that St. Paul's policy excludes coverage for the federal and state antitrust claims and that this exclusion applies to the claims that the Bafuses have alleged against Aspen. Consequently, St. Paul has no duty to indemnify Aspen for either of the claims alleged against Aspen in the Bafus's Third Amended Complaint.

The Court will grant summary judgment in favor of Plaintiff St. Paul on the ground that the exclusion from coverage for violations of trade laws applies. Although the Court's decision to grant summary judgment on the issue of the trade laws exclusion would, in and of itself, be enough to dispose of the case, the Court will briefly address the alternative arguments made by St. Paul.

**3.     Loss of commissions exclusion.**

St. Paul's third argument is that it has no duty to indemnify or defend Aspen against the *Bafus* suit because the policy excludes coverages for any loss resulting from commissions on real estate professional services. (See Exhibit A to St. Paul's Second Amended Complaint, docket #

**Memorandum Decision and Order - Page 9**

12-2, filed July 11, 2006, at page 33.) St. Paul asserts that because the Bafuses seek the return of alleged improper commissions that Aspen collected, any loss alleged in the litigation results from the commissions and is therefore excluded from the policy's coverage.

While Aspen conceded, somewhat reluctantly, that the Bafus's Third Amended Complaint only alleged violations of antitrust laws, it further argues that St. Paul would not be entitled to summary judgment on the basis of the antitrust exclusion because there is a genuine issue of fact concerning whether the policy is "illusory." Aspen argues that the policy is illusory, and therefore void, on the ground that the policy excludes coverage for losses that result from commissions. Aspen argues that this exclusion results in an illusory insurance contract because the insurer will never have to pay out on any claims because, presumably, every claim made under the policy will always include a request for repayment of commission. Accordingly, Aspen asserts that the question of whether the policy is illusory is a genuine issue of material fact which precludes the entry of summary judgment of the issue of the application of the violation of trade laws exclusion.

Under the circumstances presented in the *Bafus* suit, however, there can be no genuine issue of material fact which arises simply because the whole case centers around the commissions charged on the lot and on the house to be built. Therefore, there can be no dispute that the portion of the policy which excludes coverage for any loss resulting from commissions of real estate professional services squarely applies, and further that it does not preclude the entry of summary judgment on the application of the trade laws exclusion. This is simply not a good "test case" for addressing the question of whether this exclusion makes the policy illusory under these circumstances.

**Memorandum Decision and Order - Page 10**

Perhaps more to the point, contrary to Aspen's position, there are several situations where insurance coverage would apply to the conduct of a real estate agent and the conduct would not involve an action to recover a commission. An example could be where a buyer was suing a seller's real estate agent for misrepresenting the property in the transaction. Or where a seller might be suing his own listing agent for negligence in preparing a listing agreement after a disgruntled buyer sued that seller.

**4.      Whether the claim was made during the policy period.**

St. Paul argues that the policy does not provide coverage for loss resulting from claims made or suits brought before the policy was in effect. The policy requires that a claim or suit must be first made or brought and reported to St. Paul in order to trigger coverage. A claim or suit is "first made or brought" on the earlier of the following dates: a) the dates that St. Paul or an insured receives a written notice of a claim or suit, or b) the date that St. Paul receives written notice from an insured of a specific wrongful act that caused a loss that resulted in the *claim* or *suit*, "regardless of whether such date is before or while this agreement is in effect." (See Exhibit A to St. Paul's Second Amended Complaint, docket # 12-2, filed July 11, 2006, at page 28, emphasis added.) A "claim" is defined as a "demand that seeks damages." (*Id*. at 26.) A "suit" is defined as "a civil proceeding that seeks damages." (*Id.*)

In this case, St. Paul argues that Aspen knew about the Bafus's claim, and had received written notice with a demand for a specified amount of damages, long before the policy of March 27, 2005, became effective. For instance, in December, 2000, Aspen manager Terry Torrence responded to the Bafus's consumer protection complaint on file with the Idaho Attorney General's office after having been contacted by the AG and receiving a copy of the Bafus's letter

**Memorandum Decision and Order - Page 11**

sent to the AG.  By then, Aspen was on notice that the Bafuses had indicated to the AG in their complaint that they would like to bring a lawsuit and that they would like their $9060 back. Prior to that, in June, 2000, Aspen was on notice of the dispute when the Bafuses corresponded directly with Aspen personnel Terry Torrence and Stan Thomas about the commission and had requested that they be charged a lesser amount on the lot only.  In *Berry v. St. Paul Fire & Marine Ins. Co.*, 70 F.3d 981 (8th Cir. 1996), the court found that a letter sent to the insured that was "sufficiently demanding in tone" qualified as a "claim," even though the letter did not state damages of a particular amount and was received by the insured two days before the policy became effective.

St. Paul argues that even if the correspondence between the Bafuses and Aspen's personnel in June, 2000, does not constitute a "claim," as defined in the policy, then the information contained in the Bafus's complaint to the AG and forwarded to Aspen no later than December, 2000, surely did.  Based on these undisputed facts, St. Paul asserts that Aspen was on notice of the claim for the return of the $9060 commission in December, 2000, at the latest, which is long before the March 27, 2005, policy became effective and, therefore, the claim is outside the policy's coverage period.

Aspen responds by arguing that the claim is not outside the policy period because the policy language is when the "claim *or* suit" is first "made *or* brought."  Aspen asserts that this language sets up two tests:  when a *claim* is *made* and when a *suit* is *brought*.  In this instance, according to Aspen, it was put on notice of the suit that the Bafuses brought against it during the policy period that began on March 27, 2005, and Aspen accordingly notified St. Paul of the suit in a prompt manner, requesting that St. Paul provide a defense and coverage under the policy.

**Memorandum Decision and Order - Page 12**

The Court disagrees with Aspen's argument and finds that Aspen was on notice of the *claim made* prior to the time the March 27, 2005, policy period began. Aspen was first put on notice of a potential claim about the disputed commission through the June, 2000, exchange of correspondence between the Bafuses and the Aspen employees, one of whom was a manager. Aspen was again put on notice by the Idaho Attorney General's Office in November, 2000, after the Bafuses filed a consumer complaint and the Attorney General requested Aspen's response to the Bafus's complaint. Aspen provided a written response to the Bafus consumer complaint in December, 2000. Aspen's correspondence in June and December, 2000, indicated that the subject of the dispute centered around the amount of commission the realtor was charging and that the Bafuses were demanding at least a portion, if not all, of that money. Therefore, it is readily apparent from Aspen's own conduct that they were first aware of the alleged specific wrongful acts in writing as early as June, 2000, or by November, 2000, at the latest.

5.  **Known wrongful acts exclusion.**

In its final argument, St. Paul contends that coverage is precluded because the "known wrongful acts" exclusion applies, which states:

> **Known Wrongful Acts.** We won't cover loss that results from any wrongful act, including any part of related wrongful acts, that any protected person knew about before the beginning date from which we or any of our affiliated insurance companies have continuously provided this professional services liability protection.

(See Exhibit A to St. Paul's Second Amended Complaint, docket # 12-2, filed July 11, 2006, at page 34.) The policy does not provide coverage for losses that result from any wrongful act that Aspen knew about before St. Paul began providing it with insurance. St. Paul asserts that Aspen

**Memorandum Decision and Order - Page 13**

had knowledge of the alleged acts that ultimately became the subject of the *Bafus* litigation prior to the time that St. Paul first provided Aspen with insurance on March 27, 2001.

As to the issues of whether charging commission on the house to be built was a wrongful act and, if so, when knowledge can be attributed to Aspen: these are issues that are properly left to be decided within the confines of the *Bafus* litigation. Consequently, the Court will express no opinion on this portion of St. Paul's motion.

### 6.     The duty to defend.

The Court recognizes that the duty to defend is a separate duty from the duty to indemnify. *See Hoyle v. Utica Mut. Ins. Co.*, 137 Idaho 367,374 (2002). To determine whether the duty to defend exists, the allegations in the underlying complaint must be examined. *Hoyle*, 137 Idaho at 373. If the allegations in the underlying complaint reveal a potential for liability that would be covered under the provisions of the policy, then the insurer has a duty to defend. If the allegations do not reveal a potential for liability under the provisions of the liability policy, then the insurer has no duty to defend. *Hoyle*, 137 Idaho at 371-72; and *AMCO Ins. Co. v. Tri Spur Inv. Co.*, 140 Idaho 733, 738 (2004).

In this case, having determined that the exclusions from coverage for violations of trade laws and loss of commissions apply, as well as finding that the claim was made before the applicable policy period began, and that St. Paul has no duty to indemnify Aspen, the Court further finds that St. Paul owes no further duty to defend on the ground that the allegations in the underlying Third Amended Complaint do not reveal a potential for liability under the provisions of the liability policy. *See AMCO Ins. Co. v. Tri Spur Inv. Co.*, 140 Idaho 733, 738 (2004) (an insurer will not be required to defend a lawsuit with no covered claims; if there is a subsequent

change in the pleadings, a duty to defend may arise and the issue of the duty to indemnify might also come before the court again).

However, the Court finds that St. Paul did have a duty to defend Aspen at least up to the time that the Bafus's Third Amended Complaint was filed in the underlying litigation on February 28, 2006 (docket # 83). The reason for this is that, up to that time, the Bafus's complaint included a claim for the violation of the Real Estate Settlement Procedures Act ("RESPA"), which, as alleged, may have invoked a potential for liability that would be covered under the provisions of the policy, and thereby invoking a duty to defend on the part of St. Paul on behalf of Aspen.

**7.     Conclusion.**

The Court finds that the Plaintiff's motion for summary judgment should be granted on the ground that the following exclusions from coverage under the March 27, 2005, policy apply: 1) violation of trade laws; 2) loss resulting from commission exclusion; and 3) the claim was not first made under the relevant policy period. Based on these findings, the Court finds that St. Paul has no duty to indemnify Aspen.

The Court further finds that St. Paul had no further duty to defend Aspen beyond February 28, 2006, the date the Third Amended Complaint (docket # 83) was filed. However, St. Paul did have a duty to defend Aspen up to that date for the reasons stated above.

\ \ \

\ \ \

\ \ \

## **ORDER**

Based on the foregoing, the court being otherwise fully advised in the premises, **IT IS HEREBY ORDERED that:**

1) Plaintiff St. Paul's Motion for Summary Judgment (docket # 15), filed August 28, 2006, is GRANTED.



DATED: December 27, 2006

Honorable Mikel H. Williams
United States Magistrate Judge